FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 27, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

LORRAINE R.,[1]

           Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

          Defendant.

No. 4:19-cv-05086-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 17

---

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

8.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 15, and denies Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, the analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.

Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 3, 2015, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of March 30, 2011. Tr. 168-84. The applications were denied initially

and on reconsideration. Tr. 92-99, 102-08. Plaintiff appeared before an

administrative law judge (ALJ) on January 11, 2018. Tr. 29-48. At the hearing,

Plaintiff amended her disability onset date to December 1, 2014. Tr. 15, 32. On

February 12, 2018, the ALJ denied Plaintiff's claim. Tr. 12-28.

1    At step one of the sequential evaluation process, the ALJ found Plaintiff had

2  not engaged in substantial gainful activity since December 1, 2014, the alleged

3  onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff had the following

4  severe impairments: systemic lupus erythematosus, obesity, left shoulder

5  impingement syndrome, and left slight hypertrophic degenerative arthritis of the

6  patellofemoral joint.  Tr. 17.

7    At step three, the ALJ found Plaintiff did not have an impairment or

8  combination of impairments that met or medically equaled the severity of a listed

9  impairment.  Tr. 18.  The ALJ then concluded that Plaintiff had the RFC to

10  perform light work with the following limitations:

11           [Plaintiff] has the ability to lift and carry up to 20 pounds occasionally
             (up to 1/3 of the workday), and 10 pounds frequently (up to 2/3 of the
12           workday).  [Plaintiff] has the ability to sit up to 6 hours, and stand
             and/or walk up to 6 hours.  [Plaintiff] has the unlimited ability to push
13           and/or pull, other than as stated for lift/carry.  Regarding postural
             abilities, [Plaintiff] has the ability to frequently stoop (i.e. bend at the
14           waist) or kneel; occasionally balance, climb ramps or stairs, crouch
             (i.e. bend at the knees); but should never crawl, or climb ladders,
15           ropes or scaffolds.  Regarding use of hands, [Plaintiff] has the
             unlimited ability to handle, finger, or feel (use of skin receptors).
16           [Plaintiff] has the unlimited ability to reach in all directions, including
             overhead, except left overhead reaching is limited to occasionally.
17           [Plaintiff] has the unlimited ability to see, hear and communicate.
             Regarding the environment, [Plaintiff] has no limitations regarding
18           exposure to extreme cold, extreme heat, wetness, humidity, noise,

19

20

-

ORDER - 7

fumes, odors, dust, gases or poor ventilation: but should avoid
concentrated exposure to hazards, such as dangerous machinery and
unprotected heights.

Tr. 18.

At step four, the ALJ found Plaintiff was capable of performing her past

relevant work as a safety coordinator.  Tr. 21.  Alternatively, at step five, the ALJ

found that, considering Plaintiff's age, education, work experience, RFC, and

testimony from the vocational expert, there were jobs that existed in significant

numbers in the national economy that Plaintiff could perform, such as merchandise

marker and maid.  Tr. 22-23.  Therefore, the ALJ concluded Plaintiff was not

under a disability, as defined in the Social Security Act, from the alleged onset date

of December 1, 2014, though February 12, 2018, the date of the decision.  Tr. 23.

On February 22, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

issues for review:

1.   Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.   Whether the ALJ properly evaluated the medical opinion evidence;

3.   Whether the ALJ conducted a proper step-three analysis;

4.   Whether the ALJ conducted a proper step-four analysis; and

5.   Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 8.

## DISCUSSION

### A.   Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 15 at 16-19. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 19.

*1. Inconsistent with Medical Evidence*

The ALJ found that Plaintiff's reported symptoms were inconsistent with the objective medical evidence. Tr. 20-21. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Here, the ALJ noted Plaintiff testified that after December 2014 she

was having frequent flareups of lupus lasting up to months at a time and that her

flareups were getting worse.[3]  Tr. 20.  The ALJ highlighted Plaintiff's allegations

that she experienced shoulder pain, difficulty making a fist and gripping or holding

things, and "flares" of left knee osteoarthritis which affected her ability to walk.

Tr. 20-21.

As to Plaintiff's reported symptoms of lupus flares with fatigue, shortness of

breath, memory loss, and cloudiness, the ALJ noted that although records from

before the alleged onset dated established Plaintiff's history of lupus, Tr. 296, there

were no noted symptoms of lupus or any other severe impairment when Plaintiff

presented to a clinic in June 2015, Tr. 293-94.  Tr. 19.  The ALJ noted that

Plaintiff's laboratory results were "essentially normal" upon review.  Tr. 293.  The

ALJ found no consistent objective findings that would explain Plaintiff's

_____

[3] The ALJ's summary of Plaintiff's testimony here is not entirely accurate.

Plaintiff testified that she had experienced lupus flareups since the time of her

amended onset date in December 2014.  Tr. 34.  She also explained that she used to

experience lupus flareups for about one week per month, but at the January 2018

hearing, Plaintiff testified she had been having a lupus flareup for "a couple of

months."  Tr. 34-35.  Thus, Plaintiff testified, her lupus flareups were "getting

worse."  Tr. 35.

allegations of fatigue or shortness of breath, or that would indicate any significant

loss of function. Tr. 19 (citing Tr. 286-95). Further, the ALJ found that treatment

records from April 2017 through November 2017 showed Plaintiff was treated for

a persistent cough, but all pulmonary examinations and imaging were normal. Tr.

20 (citing Tr. 344-54). The ALJ also noted that upon examination in November

2017, Plaintiff had no rash, her lungs were clear to auscultation, and her respiration

was unlabored. Tr. 20 (citing Tr. 374). Based on this medical record, the ALJ

rationally found that Plaintiff's statements concerning the intensity, persistence,

and limiting effects of her lupus flareups were inconsistent with the objective

medical evidence.

As to Plaintiff's reported symptoms associated with her shoulder

impairment, the ALJ found that treatment records from April 2017 through

November 2017 showed no evidence of shoulder symptoms, or any other loss of

function attributable to her severe impairments. Tr. 20 (citing Tr. 344-54). The

ALJ noted that imaging of Plaintiff's left shoulder was normal. Tr. 20 (citing Tr.

362). She found that Plaintiff's range of motion in her right shoulder was mildly

limited although Plaintiff complained of pain in her left shoulder. Tr. 20 (citing Tr.

333). The ALJ noted that Plaintiff did not receive any physical therapy other than

an initial evaluation in which she asserted shoulder pain without any recognizable

cause and upon examination she displayed positive impingement signs and pain

with movement.  Tr. 20 (citing Tr. 377-84).  Further, the ALJ cited Plaintiff's testimony that she was able to lift a gallon of milk with her left upper extremity. Tr. 21, 35.  Based on this medical record, the ALJ rationally found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her shoulder impairment were inconsistent with the objective medical evidence.

As to Plaintiff's reported symptoms associated with her knee impairment, the ALJ observed that there were few objective findings beyond that of slight degenerative changes of her left knee.  Tr. 20-21 (citing Tr. 360).  The ALJ noted that Plaintiff was able to get on and off the examination table, as well as don and doff her shoes without assistance.  Tr. 20.  The ALJ found Plaintiff's gait was antalgic with Plaintiff favoring her left leg and she was unable to walk on her heels however, she was able to stand on either foot, hop, and perform a full squat.  Tr. 20 (citing Tr. 333).  Based on this medical record, the ALJ rationally found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her knee pain were inconsistent with the objective medical evidence.

As to Plaintiff's allegations that she had difficulty making a fist and gripping or holding things, the ALJ observed that Plaintiff's grip strength was 5/5 bilaterally.  Tr. 20-21, 35-36 (citing Tr. 332).  Further, the ALJ noted that Plaintiff had "diffuse tenderness" of the multiple PIP and MCP joints of both hands absent signs of active synovitis, but Plaintiff was able to make a full fist with either hand,

touch her thumb to the tip of each finger, turn a doorknob, tie a pair of shoes, manipulate a button, and pick up a coin with either hand.  Tr. 20 (citing Tr. 332, 334).  Based on this medical record, the ALJ rationally found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her manipulative limitations were inconsistent with the objective medical evidence.

Finally, as to Plaintiff's claims of depression, the ALJ highlighted evidence that Plaintiff underwent a psychological consultative examination performed by Lynn Orr, Ph.D. on March 9, 2016, and Dr. Orr found no psychological diagnoses.  Tr. 21 (citing Tr. 338-43).  The ALJ noted that Dr. Orr's opinion was corroborated by state agency medical consultants Leslie Postovoit, Ph.D., and Rita Flanagan, Ph.D.  Tr. 21 (citing Tr. 49-56, 58-65, 67-75, 77-88).  On this record, the ALJ rationally found that the medical evidence was inconsistent with Plaintiff's allegations of depression.

Plaintiff argues the ALJ improperly engaged in speculation in concluding that the objective evidence failed to support Plaintiff's allegations of disabling lupus flares.  ECF No. 15 at 18.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the

"evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of impairment alleged by Plaintiff. Tr. 19-21.

### 2. *Minimal Treatment*

In discounting Plaintiff's symptom claims, the ALJ discussed gaps in Plaintiff's treatment during the relevant period. Tr. 19-21. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating a claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. Here, the ALJ accepted Plaintiff's testimony that she did not have insurance during much of the relevant period. Tr. 22. However, the ALJ also noted that physical therapy records showed no treatment other than an initial evaluation. Tr. 20 (citing Tr. 377-84). Plaintiff had her initial physical therapy evaluation on December 20, 2017. Tr. 377-84. Three weeks later, at the January 11, 2018 hearing, Plaintiff testified that she only

recently obtained health insurance and was then able to increase her treatment and get specialist referrals.  Tr. 39-40.  To the extent that the ALJ may have discounted Plaintiff's symptom complaints in part due to her minimal treatment, based on this record, this was not a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported symptoms.

### 3.  Inconsistent Statements

The ALJ found that Plaintiff's symptom claims were undermined by her inconsistent reports regarding her lupus flareups.  Tr. 20.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").  The ALJ found that Plaintiff's allegations that she was unable to work due to lupus flareups with fatigue, shortness of breath, memory loss, and cloudiness were undermined by Plaintiff's inconsistent reports regarding the frequency of her flareups.  Tr. 20.  The ALJ determined that Plaintiff's report to a medical provider that she experienced "intermittent" flareups was inconsistent with her hearing testimony that her flareups were "frequent."  Tr. 20.  However, when

read in context, the record referenced by the ALJ does not contain inconsistent statements by Plaintiff about the frequency of her flareups. Rather, the statements noted by the ALJ support Plaintiff's testimony that her flareups were getting worse at the time of the hearing. Tr. 20; *see, e.g.,* Tr. 373 (November 28, 2017: Plaintiff reported to her medical provider that she was "having some intermittent flare up associated with some skin rashes and some memory loss and cloudiness"); Tr. 35 (January 11, 2018: Plaintiff testified at the hearing that her lupus flareups used to last for about a week out of a month, but at the time of the hearing she had been "in a flare for a couple of months" and it was "getting worse"). Thus, while the ALJ noted Plaintiff testified that after December 2014 she was having frequent flareups of lupus lasting up to months at a time and that her flareups were getting worse, the ALJ's summary of Plaintiff's testimony here is not entirely accurate. Plaintiff did testify that she had experienced lupus flareups since the time of her amended onset date in December 2014, but her testimony also revealed that her lupus flareups were increasing in frequency by the time of the hearing in January 2018. Tr. 34-35. The ALJ's finding that Plaintiff provided inconsistent statements about the frequency of her lupus flareups is not supported by substantial evidence.

Thus, even though the ALJ's finding that Plaintiff's symptom testimony was not consistent with the objective medical evidence is supported by substantial evidence, the ALJ's overall decision to discount Plaintiff's symptom testimony

cannot be affirmed because the only other reasons relied on by the ALJ to discount

Plaintiff's symptom testimony—minimal treatment and inconsistent statements—

were not clear and convincing reasons supported by substantial evidence.  The

ALJ's rejection of Plaintiff's symptom claims may not solely be based on the lack

of supporting objective medical evidence.  *See Rollins*, 261 F.3d at 857; *Bunnell*,

947 F.2d at 346-47; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Therefore,

the ALJ is instructed to reevaluate Plaintiff's symptom testimony on remand.

### B.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of William

Drenguis, M.D. and Louis Martin, M.D.  ECF No. 15 at 10-14.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's opinion, and an examining physician's opinion carries more weight

than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to

the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

### 1. Dr. Drenguis

William Drenguis, M.D., examined Plaintiff on March 15, 2016 and diagnosed Plaintiff with left heel pain, left hip internal derangement, diffuse arthralgias most noted in the hands, and poor balance with a positive Romberg. Tr. 330-35. He opined that Plaintiff could stand and walk with normal breaks for less

than two hours in an eight-hour workday, noting that she was limited by her left heel spurs and left hip internal derangement. Tr. 335. Dr. Drenguis determined that Plaintiff had no limits on sitting. Tr. 335. He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, noting that she was limited by her left hip internal derangement and arthralgias of her hands. Tr. 335. Dr. Drenguis concluded that Plaintiff could frequently stoop, occasionally climb steps, stairs, crouch, kneel, and crawl, frequently reach overhead and forward, and frequently handle, finger, and feel. Tr. 335. He noted that Plaintiff should never climb ladders, ropes, or scaffolds, as she was limited by her left hip internal derangement and left heel spurs. Tr. 335. Dr. Drenguis determined that Plaintiff was limited in working at heights and around heavy machinery because of her poor balance. Tr. 335.

The ALJ discounted Dr. Drenguis' opinion. Tr. 20-21. Because Dr. Drenguis' opinion was contradicted by the nonexamining opinion of Dr. Martin, Tr. 85-86, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Drenguis' opinion. *Bayliss*, 427 F.3d at 1216.

### a. Inconsistent with the Record as a Whole

The ALJ found that Dr. Drenguis' opinion that Plaintiff was only able to stand and walk for less than two hours was inconsistent with the record as a whole. Tr. 21. An ALJ may discredit physicians' opinions that are unsupported by the

record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  The ALJ determined that Dr. Drenguis' findings of bone spurs and tenderness of the heel and hip were not elsewhere reproduced or affirmed with imaging, and therefore they did not meet the durational requirement for disability.  Tr. 21; *see* 20 C.F.R. §§ 404.1505(a), 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same).

Plaintiff argues that the ALJ arbitrarily substituted her own opinion for that of Dr. Drenguis and when considered in conjunction with Plaintiff's lupus flares, there was "overwhelming support" for Dr. Drenguis' opined standing and walking limitations.  ECF No. 15 at 12-13.  However, Plaintiff does not cite any evidence in the record to support Dr. Drenguis' findings of bone spurs or tenderness of the heel and hip.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Where, as here, evidence

is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence). This was a specific and legitimate reason to discount Dr. Drenguis' opinion as to Plaintiff's standing and walking limitations.

### b. Inconsistent with Examination

The ALJ determined that Dr. Drenguis' opinions were inconsistent with Dr. Drenguis' own examination of Plaintiff. Tr. 21. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ noted that Dr. Drenguis' examination results showed Plaintiff had full strength in her lower extremities, normal range of motion in her knee, and she was able to get on and off the examination table without assistance. Tr. 332-34. The ALJ cited Plaintiff's ability to stand on either foot, hop, and perform a full squat, despite an antalgic gait. Tr. 20, 333. Moreover, although Dr. Drenguis opined Plaintiff would have manipulative limitations, Tr. 335, the ALJ noted that Plaintiff was able to make a

full fist with either hand, touch her thumb to the tip of each finger, turn a doorknob, tie a pair of shoes, manipulate a button, and pick up a coin with either hand.  Tr. 20, 332.  The ALJ noted that Plaintiff had full grip strength on both sides.  Tr. 20, 332.

Plaintiff asserts that Dr. Drenguis' examination supported his opinion about Plaintiff's standing and walking limitations, as Dr. Drenguis observed Plaintiff appearing uncomfortable with a markedly antalgic gait, favoring her left leg, persistently falling toward the right-hand side, displaying an inability to walk on her heels due to left heel discomfort, and exhibiting poor tandem walking.  ECF No. 15 at 4 (citing Tr. 332-33).  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan*, 169 F.3d at 599-600.  Where, as here, evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).  The ALJ provided specific and legitimate reasons to discount Dr. Drenguis' opined limitations.

### 2. Dr. Martin

On March 30, 2016, state agency medical consultant Louis Martin, M.D., assessed Plaintiff's residual functional capacity.  Tr. 77-88.  Dr. Martin opined that

ORDER - 24

Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry

10 pounds, and was unlimited in pushing and/or pulling other than his opined

limitations on lifting and carrying. Tr. 85. He determined that Plaintiff could

stand and/or walk for about six hours in an eight-hour workday and sit for about

six hours in an eight-hour workday. Tr. 85. Dr. Martin opined that Plaintiff could

frequently stoop and kneel, occasionally crouch, crawl, balance, and climb ramps

and stairs. Tr. 85-86. He opined that Plaintiff could never climb ladders, ropes, or

scaffolds. Tr. 85. He noted that Plaintiff should avoid concentrated exposure to

vibration and hazards. Tr. 86. The ALJ gave Dr. Martin's opinion significant

weight. Tr. 21.

Plaintiff argues that the ALJ failed to properly explain the weight given to

Dr. Martin's opinion. ECF No. 15 at 14. The ALJ must evaluate every medical

opinion received according to a list of factors set forth by the Social Security

Administration. 20 C.F.R. §§ 404,1527(c), 416.927(c). These factors apply when

evaluating the opinions of state medical consultants. 20 C.F.R. §§ 404.1513,

416.913. "Where an ALJ does not explicitly reject a medical opinion or set forth

specific, legitimate reasons for crediting one medical opinion over another, he

errs." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464

(9th Cir. 1996)). Plaintiff argues that the ALJ erred by giving significant weight to

Dr. Martin's opinion yet omitting without explanation Dr. Martin's opined

restriction to never climbing ladders, ropes, or scaffolds. ECF No. 15 at 14.

Plaintiff's argument is without merit, as the ALJ expressly incorporated into the

RFC Dr. Martin's opined restriction to never climb ladders, ropes, or scaffolds. Tr.

18. The ALJ did not err in evaluating Dr. Martin's opinion.

## C.    Step Three

Plaintiff contends the ALJ erred by finding that she did not met Listings 1.02

and 14.02 at step three. ECF No. 15 at 14-16. At step three, the ALJ must

determine if a claimant's impairments meet or equal a listed impairment. 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments

"describes for each of the major body systems impairments [which are considered]

to be severe enough to prevent an individual from doing any gainful activity,

regardless of his or her age, education or work experience." 20 C.F.R.

§§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that

he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R.

§§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, he

will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d

at 683.

Plaintiff asserts the ALJ should have found that she met Listing 1.02 for

major dysfunction of a joint. ECF No. 15 at 15. Listing 1.02 involves major

dysfunction of a joint "[c]haracterized by gross anatomical deformity (e.g.,

subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint

pain and stiffness with signs of limitation of motion or other abnormal motion of

the affected joint(s), and findings on appropriate medically acceptable imaging of

joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20

C.F.R. Pt. 404, Subpt. P, App. 1, 1.02. Listing 1.02A requires "[i]nvolvement of

one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in

inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt.

P, App. 1, 1.02A. "Ineffective ambulation is defined generally as having

insufficient lower extremity functioning . . . to permit ambulation without the use

of a hand-held assistive device(s) that limits the functioning of both upper

extremities." 20 C.F.R. Part 404, Subpt P, App. 1, 1.00B2b. Listing 1.02B requires

"[i]nvolvement of one major peripheral joint in each upper extremity (i.e.,

shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross

movements effectively, as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App.

1, 1.02B. "An ability to perform fine and gross movements effectively means . . .

an impairment that interferes very seriously with the individual's ability to

independently initiate, sustain, or complete activities" involving the upper

extremities. 20 C.F.R. Part 404, Subpt P, App. 1, 1.00B2c. Here, the ALJ

determined that Plaintiff's left slight hypertrophic degenerative arthritis of the

patellofemoral joint and left shoulder impingement syndrome were severe impairments. Tr. 17. However, the ALJ observed that imaging of Plaintiff's left knee showed only slight degenerative changes. Tr. 21. The ALJ also noted that imaging of Plaintiff's left shoulder was negative. Tr. 21. Further, the ALJ indicated that prior examinations found some limited range of motion of Plaintiff's shoulder, but that the evidence overall did not indicate loss of function beyond a limitation of occasional use, a fact acknowledged by Plaintiff in testifying that she was able to lift a gallon of milk on the left. Tr. 21, 35.

Plaintiff cites her own symptom reporting, diagnoses and observations from an examination with Dr. Drenguis, and imaging of her knees, as evidence that the ALJ should have identified as support for meeting Listing 1.02. ECF No. 15 at 15-16; *see, e.g.,* Tr. 334 (March 2016: Dr. Drenguis diagnosed Plaintiff with left hip internal derangement); Tr. 337, 360 (March 2016 and December 2017: imaging showed early degenerative changes of Plaintiff's bilateral knees); Tr. 332, 335 (March 2016: Dr. Drenguis noted Plaintiff demonstrated a markedly antalgic gait and poor balance with a positive Romberg upon examination); Tr. 334, 377-83 (Plaintiff reported muscle pain and joint pain, stiffness, and swelling in the hands, hip, back, and left shoulder). The evidence Plaintiff identifies does not undermine the ALJ's finding. A diagnosis alone does not establish the existence of a severe impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). As

discussed *supra*, the ALJ concluded that Dr. Drenguis' examination findings were not entirely consistent with the evidence in the record or his own examination results. Tr. 21. Additionally, the record fails to show that Plaintiff's ambulation required the use of a hand-held assistive device that limited the functioning of both upper extremities. Rather, the record demonstrates that Plaintiff was capable of ambulating without aids. *See, e.g.,* Tr. 263 (hospital treatment notes reported Plaintiff "[a]mbulates without aide); Tr. 330, 333, 335 (Dr. Drenguis noted that Plaintiff did not use an assistive device). The record also fails to show that Plaintiff had such an extreme loss of function that she was unable to independently initiate, sustain, or complete activities involving the upper extremities. Instead, imaging of Plaintiff's left shoulder was normal, and Plaintiff reported the ability to take care of her daily personal needs, including dressing, showering, and preparing meals. Tr. 331-32, 362. Therefore, Plaintiff fails to show error in the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal Listing 1.02.

Plaintiff asserts the ALJ should have found that she met Listing 14.02 for systemic lupus erythematosus (SLE). ECF No. 15 at 15-16. Listing 14.02 is met if a claimant's lupus is accompanied by either: (1) involvement of two or more organs/body systems, with one of the organs/body systems involved to at least a moderate level of severity and at least two of the constitutional symptoms or signs

(severe fatigue, fever, malaise, or involuntary weight loss; or (2) repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one marked level of either limitation of activities of daily living, limitation in maintaining social functioning, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  20 C.F.R. 404, Subpt. P, App. 1, 14.02.  Plaintiff cites her own symptom reporting and diagnosis of lupus as evidence that the ALJ should have identified as support for meeting Listing 14.02.  ECF No. 15 at 15-16.  The evidence Plaintiff identifies does not undermine the ALJ's finding.  As noted *supra*, a diagnosis alone does not establish the existence of a severe impairment.  *See Key*, 754 F.2d at 1549 (9th Cir. 1985).  Further, Plaintiff has not demonstrated that there is evidence of involvement of any organ/body system at a moderate level of severity, as the objective findings related to her lupus diagnosis were minimal, nor has Plaintiff produced evidence of marked limitations in activities of daily living, social functioning, or completing tasks in a timely manner.  Therefore, Plaintiff fails to show error in the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal Listing 14.02.

Plaintiff also faults the ALJ because the evidence on which she relied is not included specifically within the ALJ's step three discussion.  ECF No. 15 at 15.

ORDER - 30

However, there is no requirement that the ALJ's rationale must be in a particular place in the decision. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001); *see also Kruchek v. Barnhart*, 125 Fed. App'x. 825, 827 (9th Cir. 2005) (ALJ adequately analyzed evidence elsewhere in decision). The ALJ did not err in finding that Plaintiff did not meet or equal a Listing at step three.

**D.    Step Four**

Plaintiff contends that the ALJ erred in finding she was capable of performing her past relevant work at step four. ECF No. 15 at 19. At step four of the sequential evaluation, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). To make this determination, the ALJ must make the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62 at *4 (January 1, 1982). Social Security regulations classify work by physical exertion requirements and skill requirements. 20 C.F.R. §§ 404.1567, 404.1568; 20 C.F.R. §§ 416.967, 416.968.

Plaintiff asserts that the RFC precludes performance of her past relevant work as a safety coordinator. ECF No. 15 at 19. Both Dr. Drenguis and Dr. Martin opined that Plaintiff could never climb ladders, ropes, or scaffolds. Tr. 85,

335.  The ALJ fully credited Dr. Martin's opinion.  Tr. 21.  Thus, in her hypothetical to the vocational expert, the ALJ included a limitation to never climb ladders, ropes, or scaffolds.  Tr. 43.  In response to this hypothetical, the vocational expert testified that Plaintiff would be capable of performing her past relevant work as a safety coordinator.  Tr. 42, 44.  Plaintiff's counsel then questioned the vocational expert about whether the job of safety coordinator would require an individual to climb up into the cab of a truck, "similar to climbing ladders."  Tr. 45.  The vocational expert testified that there would be minimal climbing involved in the safety coordinator job.  Tr. 45.  The ALJ failed to address the discrepancy between the RFC's restriction against climbing ladders, ropes, or scaffolds and the minimal climbing involved in the safety coordinator job, as noted by the vocational expert.  Tr. 18, 21.  Thus, the ALJ erred in her step four analysis.  Because this case is remanded on other grounds, the Court declines to engage in harmless error analysis here.  On remand, the ALJ is instructed to elicit testimony from Plaintiff and a vocational expert to clarify whether Plaintiff's restriction against climbing ladders, ropes, or scaffolds would preclude Plaintiff from performing her past relevant work.

**E.    Other Challenges**

Plaintiff also challenges the ALJ's analysis at step five of the sequential evaluation.  ECF No. 15 at 20-21.  However, the ALJ's findings at step five

inherently depend on the ALJ's findings regarding Plaintiff's symptom claims. Because this case is remanded for the ALJ to reconsider Plaintiff's symptom claims and conduct a new analysis at step four, the Court declines to address Plaintiff's step five challenge here. The ALJ is instructed to conduct a new sequential analysis on remand in light of the new evaluation of Plaintiff's symptom claims.

**F.     Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 21. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations

omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Even if the ALJ were to fully credit Plaintiff's symptom testimony, as discussed *supra*, the evidence would still present outstanding conflicts for the ALJ to resolve.  Specifically, nonexamining physician Dr. Martin opined that Plaintiff was capable of performing light work with the limitations outlined in the RFC, Tr. 86, and the ALJ gave this opinion significant weight.  Tr. 21.  A discrepancy also remains as to whether Plaintiff would be capable of performing her past relevant work.  Therefore, further proceedings are necessary for the ALJ to reconsider Plaintiff's symptom testimony and develop the record as to Plaintiff's past relevant work.  On

remand, the ALJ should reconsider Plaintiff's symptom testimony, conduct a new sequential analysis, take testimony from a vocational expert, and reformulate the RFC as necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED November 27, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 35